UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
CLAIRE ALLISON,                      : 14 Civ. 1618 (LAK) (JCF)
                                     :
                                     :            REPORT AND
                 Plaintiff,          :         RECOMMENDATION
                                     :
       - against -                   :
                                     :
CLOS-ETTE TOO, LLC, CLOS-ETTE,       :
LLC, and MELANIE CHARLTON            :
FASCITELLI,                          :
                                     :
                                     :
                 Defendants.         :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE LEWIS A. KAPLAN, U.S.D.J.:

     The plaintiff, Claire Allison, brings this action against
Clos-ette Too, LLC ("C2"), Clos-ette, LLC, and Melanie Charlton
Fascitelli, asserting seventeen causes of action arising from an
employment relationship.  Specifically, the plaintiff asserts
claims of breach of contract and quasi-contract (Claims 1-8); fraud
(Claims 9-11); promissory estoppel (Claim 12); failure to pay
proper wages as required by the Fair Labor Standards Act, 29 U.S.C.
§ 201 et seq. (the "FLSA"), and New York Labor Law ("NYLL") (Claims
13-16); and privacy infringement in violation of the New York Civil
Rights Law ("NYCRL") (Claim 17).  The defendants now move pursuant
to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss
all claims against Ms. Fascitelli and Clos-ette, as well as all
claims against C2 that do not sound in contract.  The plaintiff

opposes the motion to dismiss and cross-moves for leave to amend the complaint.  For the following reasons, I recommend that the defendants' motion be granted in part and denied in part, and the plaintiff's motion be denied.[1]

Background

According to the Complaint, Clos-ette is a "successful high-end custom closet design company" that provides services to wealthy clients and celebrities.  (Compl., ¶ 8).  C2 is its "wholly owned subsidiary," that sells closet and organizational accessories modeled after those used by Clos-ette.  (Compl., ¶ 10; Memorandum of Law in Support of Defendants C2 and Melanie Fascitelli's Motion to Dismiss ("Def. Memo. 1"), at 2).  C2 is a Delaware limited liability company and Clos-ette is a New York limited liability company; both operate from the same office in New York City.  (Compl., ¶¶ 2-3).  In November 2011, Ms. Allison responded to a posting for a job listed as the "Chief Operating Officer" of C2.  At the time, she was working as Vice President of Asset Management at Lone Star Funds ("Lone Star").  (Compl., ¶ 15).  On March 15, 2012, she met with Ms. Fascitelli, the founder and chief executive of both Clos-ette and C2, to discuss the employment opportunity.

---

[1] Although I have the authority simply to decide the motion to amend, I address it in this Report and Recommendation in the interest of efficiency since it was asserted as a cross-motion to the motion to dismiss.

(Compl., ¶¶ 4, 5, 16).  They did not agree on a position title for the plaintiff at that time.  (Compl., ¶ 16).

After the interview, Ms. Allison began working in her spare time for C2, devoting up to forty hours per week to creating a growth plan for the company.  (Compl., ¶¶ 16, 18).  Ms. Fascitelli gave Ms. Allison a company e-mail address on May 21, 2012.  (Compl., ¶ 21).  On June 13, 2012, she wrote an e-mail stating that Ms. Allison would transition to the position of Director of Business Development for C2 upon the completion of a round of fund-raising.  (Compl., ¶ 24).  Soon after, Ms. Allison requested a salary of $200,000 annually as well as a 10% membership interest in C2.  (Compl., ¶ 30).  Ms. Fascitelli orally agreed on September 5, 2012, but changed her mind one day later and instead offered Ms. Allison $150,000.  (Compl., ¶¶ 30-31).  Ms. Allison agreed to the lower salary.  (Compl., ¶ 31).

In October 2012, Ms. Allison and Ms. Fascitelli signed an agreement memorializing the employment terms, reducing the equity participation to 8%.  (Compl., ¶ 33).  Shortly thereafter, they agreed on a vesting schedule for Ms. Allison's equity in C2, with 3% vesting immediately and the remaining 5% vesting at different future milestones.  (Compl., ¶ 34).

Ms. Allison was terminated from Lone Star in December 2012.  (Compl., ¶ 35).  At that time, she had not been paid any salary for

3

her work at C2, and on January 17, 2013, she inquired about the unpaid salary. (Compl., ¶ 36). Ms. Fascitelli responded that the plaintiff was being paid with a "membership interest." (Compl., ¶ 36). On April 4, 2013, Ms. Allison wrote an e-mail to Ms. Fascitelli stating that she would no longer work for C2 but would retain her equity interest. (Compl., ¶ 38). Ms. Fascitelli responded by telling the plaintiff that her equity interest had not vested and she had no ownership, but offered her a one-half percent interest for "helping with the business plan." (Compl., ¶¶ 38-39). Ms. Allison rejected the offer. (Compl., ¶ 39). The plaintiff alleges that C2 is worth between twelve and thirty million dollars. (Compl., ¶¶ 25-26).

The plaintiff filed the instant action in New York Supreme Court, and it was removed to this Court on March 10, 2014. The motions to dismiss were filed on June 9, 2014. The plaintiff responded by opposing the motions and filing a cross-motion to amend, which did not include a proposed amended complaint.

Discussion

    A.  Motion to Amend

As an initial matter, the motion to amend should be denied. Rule 15 of the Federal Rules of Civil Procedure provides that courts should "freely give" leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); see also Foman v. Davis, 371

U.S. 178, 182 (1962); <u>Aetna Casualty & Surety Co. v. Aniero Concrete Co.</u>, 404 F.3d 566, 603–04 (2d Cir. 2005). However, it is within "the sound discretion of the court" to determine whether to grant or deny leave to amend. <u>John Hancock Mutual Life Insurance Co. v. Amerford International Corp.</u>, 22 F.3d 458, 462 (2d Cir. 1994). Any motion to amend should be accompanied by a proposed amended complaint. <u>Segatt v. GSI Holding Corp</u>, No. 07 Civ. 11413, 2008 WL 4865033, at *4 (S.D.N.Y. Nov. 3, 2008). While failure to include the proposed amendment is not necessarily fatal to the motion, the court may deny leave when it is unclear what changes are proposed. <u>See</u> <u>id.</u>; <u>Gulley v. Dzurenda</u>, 264 F.R.D. 34, 36 (D. Conn. 2010) (noting that court should have proposed pleading to properly evaluate whether to grant leave to amend); <u>Schwab v. Nathan</u>, 8 F.R.D. 227, 228 (S.D.N.Y. 1948) ("[C]ommon sense dictates the necessity of having before the Court the proposed amendment."). Thus, if the "failure to attach a copy of the proposed amendment forces the court and opposing party to go through the original pleading page by page and compare it to the proposed amendments to determine what changes are to be made," the court may deny leave. 1 Motions in Federal Court § 5:218. Since the plaintiff has neither submitted a proposed amended complaint nor made sufficiently clear which facts and claims she seeks to add, the motion for leave to amend should be denied. The factual

allegations analyzed below are therefore drawn exclusively from the plaintiff's original complaint.

   B.   <u>Motion to Dismiss</u>

   To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"   <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).   While a complaint need not make "'detailed factual allegations,'" it must contain more than mere "'labels and conclusions' or '[f]ormulaic recitation[s] of the elements of a cause of action.'"   <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555).   A complaint with "'naked assertions' devoid of 'further factual enhancement'" is insufficient.   <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557).   Further, where the complaint's factual allegations permit the court to infer only a possible, but not a plausible, claim for relief, it fails to meet the minimum standard.   <u>Id.</u> at 679.   In ruling on a motion to dismiss, the court's task "'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"   <u>GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd.</u>, 580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008) (quoting <u>Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of</u>

New York, 375 F.3d 168, 176 (2d Cir. 2004)).

In assessing a motion to dismiss, a court must take as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 110-11 (2d Cir. 2010). However, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

The plaintiff alleges a total of seventeen causes of action against the three defendants. I will analyze her common law claims first and then turn to statutory claims. I will begin with the fraud allegations because their viability is relevant to resolving the claims based on piercing the corporate veil in order to reach Ms. Fascitelli and Clos-ette.

1. Fraud

Ms. Allison alleges fraud, fraudulent inducement, and fraudulent concealment against all three defendants, claiming that Ms. Fascitelli never intended to pay her and purposely kept that information from her in order to receive the benefit of Ms. Allison's work. (Compl., ¶¶ 93-111).

When a claim for fraud is predicated on the same facts as a breach of contract claim, it must allege circumstances beyond the breach itself. Under New York law, a plaintiff must (i)

7

"demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc., 98 F.3d 13, 20 (2d Cir. 1996) (internal citations omitted); accord B&M Linen, Corp. v. Kannegiesser, USA, Corp., 679 F. Supp. 2d 474, 480 (S.D.N.Y. 2010). Absent breach of a duty separate from or in addition to a breach of the contract, fraud claims based on misrepresentations about the future or lack of sincerity when entering the contract should be dismissed as redundant. See First Bank of Americas v. Motor Car Funding, Inc., 257 A.D.2d 287, 291, 690 N.Y.S.2d 17, 20-21 (1st Dep't 1999); Gordon v. Dino De Laurentiis Corp., 141 A.D.2d 435, 436; 529 N.Y.S.2d 777 (1st Dep't 1988).

Here, the plaintiff fails to allege any facts supporting fraud beyond her claim that Ms. Fascitelli never intended to pay her. (Compl., ¶¶ 95, 101-102, 108-109). To support this contention, the plaintiff proffers only the fact that another person affiliated with C2, Tom Achtemichuk, was not paid until after Ms. Allison ceased working for C2. (Compl., ¶¶ 32, 108). But the timing of Mr. Achtemichuk's compensation is no indication of fraudulent intent beyond the allegation that Ms. Fascitelli "was not sincere

when [she] promised to perform the contract." First Bank of Americas, 257 A.D.2d at 291, 690 N.Y.S.2d at 2. Therefore, the plaintiff's fraud claims are "simply [] breach of contract claim[s] in the tort clothing of (factually unsupported) allegations of an intent to breach," Telecom International America. v. AT&T Corp., 280 F.3d 175, 196 (2d Cir. 2001), and should be dismissed.

    2.  Breach of Contract

Ms. Allison alleges breach of contract claims for unpaid salary and equity in C2. (Compl., ¶¶ 41-69). The defendants have moved to dismiss only the claims against Clos-ette and Ms. Fascitelli.

    a.  Ms. Fascitelli

Ms. Fascitelli is liable for a breach of contract as an individual only if the plaintiff can pierce the corporate veil of C2. The parties have not, however, addressed question of which state's law governs this issue.

Ms. Fascitelli is a New York resident (Compl., ¶ 6), while C2 is a Delaware LLC with a New York office. (Compl., ¶ 2). As the forum state, New York's choice of law rules apply. Rogers v. Grimaldi, 875 F.2d 994, 1002 (2d Cir. 1989); accord Access 4 All, Inc. v. Trump International Hotel and Tower Condominium, No. 04 Civ. 7497, 2007 WL 633951, at *3 (S.D.N.Y. Feb. 26, 2007). Under New York choice of law rules, "[t]he law of the state of

incorporation determines when the corporate form will be disregarded." Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995) (alteration in original) (internal quotation marks omitted). This principle applies to LLCs as well as corporations. See NetJets Aviation, Inc. v LHC Communications, LLC, 537 F.3d 168, 178 (2d Cir. 2008) (corporate veil-piercing principles generally applicable to LLCs); Phillips v. Reed Group, Ltd., 955 F. Supp. 2d 201, 228 (S.D.N.Y. 2013) (applying choice-of-law analysis to LLC as well as corporation). However, when both parties' briefs on an issue rely on New York law, such implied consent is sufficient to establish the applicable choice of law regarding that issue. Arch Insurance Co. v. Precision Stone, Inc., 584 F.3d 33, 39 (2d Cir. 2009) (parties' briefs applying New York substantive law sufficient to assume implied consent); accord National Gear and Piston, Inc. v. Cummins Power Systems, LLC, 975 F. Supp. 2d 392, 399 (S.D.N.Y. 2013). Here, both parties have relied on New York law. (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss and in Support of Plaintiff's Cross-Motion to Amend Complaint at 6-7; Def. Memo. 1 at 7). Furthermore, as acknowledged by the defendants, (Def. Memo. 1 at 7 n.2), Delaware law and New York law are similar with regard to holding a corporate officer liable for the actions of a corporation. See LaCourte v. JP Morgan Chase & Co., No. 12 Civ. 9453, 2013 WL 4830935, at *6 n.2 (S.D.N.Y.

Sept. 4, 2013) ("New York and Delaware veil-piercing law do not materially differ"). Therefore, I will analyze the veil piercing issue using New York law.

A fundamental purpose of incorporation is to protect the owner, president, or CEO from individual liability. Novak v. Scarborough Alliance Corp., 481 F. Supp. 2d 289, 292-93 (S.D.N.Y. 2007); see also Gartner v. Snyder, 607 F.2d 582, 586 (2d Cir. 1979). In most circumstances, "[w]here a principal of a corporation expressly signs a contract in [] her capacity as an officer of the corporation, unless [] she purports to bind [] herself, [] she will not be held personally liable under the contract." Maranga v. McDonald & T. Corp., 8 A.D.2d 351, 352, 777 N.Y.S.2d 732, 733 (2d Dep't 2004). However, when "necessary to prevent fraud or achieve equity," courts will "pierce the corporate veil." Morris v. N.Y. State Department of Taxation and Finance, 82 N.Y.2d 135, 140-41, 603 N.Y.S.2d 807, 810 (1993) (internal quotation marks omitted).

New York courts are reluctant to disregard the corporate form, and will do so only when it "'has been used to achieve fraud, or when the corporation has been so dominated by an individual or another corporation . . . and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego.'"

11

Bridgestone/Firestone, 98 F.3d at 17-18 (alteration in original) (quoting Gartner v. Snyder, 607 F.2d 582, 586 (2d Cir. 1979)). Where, as here, a plaintiff does not have a viable fraud claim, she may nonetheless prevail in piercing the corporate veil through the "alter ego" theory by "identifying some non-fraudulent wrong attributable to the defendant's complete dominion of the corporation in question." United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc., 216 F. Supp. 2d 198, 223 (S.D.N.Y. 2002).

In determining whether an individual has sufficiently dominated a corporation to justify piercing the corporate veil, courts consider a number of factors, including "the intermingling of corporate and personal funds, undercapitalization of the corporation, failure to observe corporate formalities such as the maintenance of separate books and records, . . . and the inactivity of other officers and directors." Bridgestone/Firestone, 98 F.3d at 18. The plaintiff does not have to plead all the elements of fraud to succeed in the alter ego analysis, In re Currency Conversion Fee Antitrust Litigation, 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003), but some allegation of fraud or bad faith must be proffered to satisfy the requirement for a legal wrong, see Kashfi v. Philbro-Salomon, Inc., 628 F. Supp. 727, 735 (S.D.N.Y. 1986).

Ms. Allison has not alleged facts sufficient to establish complete domination or the commission of a legal wrong.  No facts

are presented to suggest that Ms. Fascitelli acted tortiously in her capacity as a corporate officer such that her actions could be seen as her own and not those of the corporation.  See United Feature Syndicate, 216 F. Supp. 2d at 223.  None of the factors for analyzing complete domination are alleged: the complaint makes no reference to lack of corporate formalities, intermingling, or personal use of corporate funds by Ms. Fascitelli.

Furthermore, even if Ms. Fascitelli did exercise complete domination over C2, Ms. Allison must also allege sufficient facts to show that Ms. Fascitelli used her control to commit a fraud or legal wrong against her.  See Kashfi, 628 F. Supp. at 735 ("There must be a showing of bad faith or fraud in order to overcome the presumption of separateness.").  Aside from the fraud claims -- which are inadequate -- the plaintiff has not offered a wrong sufficient to justify piercing the corporate veil.  Therefore, the breach of contract claims against Ms. Fascitelli should be dismissed.

### b.  Clos-ette

The plaintiff alleges that Clos-ette is liable for breach of contract as the parent to C2, again through piercing the corporate veil.[2]  Pl. Memo. 2 at 7-16).  "It is a general principle of

---

[2] The plaintiff also alleges that Clos-ette is liable under the "single integrated enterprise" theory. (Plaintiff's Memorandum in Opposition to Defendant Clos-ette, LLC's Motion to Dismiss ("Pl.

corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." <u>United States v. Bestfoods</u>, 524 U.S. 51, 61 (1998) (internal quotation marks omitted); <u>accord</u> <u>In re Digital Music Antitrust Litigation</u>, 812 F. Supp. 2d 390, 417-18 (S.D.N.Y. 2011). As discussed above, therefore, piercing the corporate veil requires very persuasive reasons -- such as fraud -- and each state may have different requirements for establishing when it is warranted.

The plaintiff and the defendants disagree about the law applicable to the question of whether Clos-ette can be held liable for C2's alleged breach of contract. (Pl. Memo. 2 at 11-13; Memorandum of Law in Support of Defendant Clos-ette, LLC's Motion to Dismiss the Complaint at 6). As stated above, the law of the state of incorporation determines when the corporate form will be disregarded for corporations and LLCs alike. <u>Fletcher</u>, 68 F.3d at 1456; <u>NetJets Aviation</u>, 537 F.3d at 178. C2 -- the plaintiff's alleged primary employer -- is a Delaware LLC and, therefore, is

---

Memo. 2") at 9-11). However, it is an open question whether this doctrine, which has been extended to several specific employment contexts, applies to common law claims of employees in New York. <u>Horizon Plastics, Inc. v. Constance</u>, No. 00 Civ. 6458, 2002 WL 398668, at *3 n.4 (S.D.N.Y. March 13, 2002). I decline to reach this question, particularly because, as discussed below, Ms. Allison has not alleged that C2 and Clos-ette have centralized control of labor relations, which is the "central concern" of the doctrine. <u>Murray v. Miner</u>, 74 F.3d 402, 404-05 (2d Cir. 1996). Thus, my analysis will be limited to piercing the corporate veil.

subject to Delaware's veil-piercing laws.  (Compl., ¶ 2).  Ms.
Allison argues, however, that the court should apply New York law.
(Pl. Memo. 2 at 11-13).  As discussed above, the two states do not
materially differ in their veil-piercing theories.  See LaCourte,
2013 WL 4830935, at *6 n.2.  In Delaware, "a court can pierce the
corporate veil of an entity . . . where a subsidiary is in fact a
mere instrumentality or alter ego of its owner."  Geyer v.
Ingersoll Publications Co., 621 A.2d 784, 793 (Del. Ch. 1992).
Both states require more than a showing of parent-subsidiary
relationship and impose a strong presumption against piercing the
veil, creating a heavy burden for the plaintiff.  See In re Digital
Music, 812 F. Supp. 2d at 418.  Since there is little material
difference, and since C2 is a Delaware LLC, I will apply Delaware
law.

Under Delaware law, to prevail on an alter-ego theory, Ms.
Allison must show "(1) that the parent and subsidiary operated as
a single economic entity and (2) that an overall element of
injustice or unfairness . . . [is] present."  Fletcher, 68 F.3d at
1457 (alterations in original) (internal quotation marks omitted).
In order to determine whether a parent and subsidiary company
operate as a "single economic entity," Delaware courts look at
factors including:

[w]hether the corporation was adequately capitalized for

15

the corporate undertaking; whether the corporation was
solvent; whether dividends were paid, corporate records
kept, officers and directors functioned properly, and
other corporate formalities were observed; whether the
dominant shareholder siphoned corporate funds; and
whether, in general, the corporation simply functioned as
a facade for the dominant shareholder.

Id. at 1458 (internal quotation marks omitted); accord National
Gear and Piston, 975 F. Supp. 2d at 403; see also Trevino v.
Merscorp, Inc., 583 F. Supp. 2d 521, 528-29 (D. Del. 2008).
However, "[i]n the alter-ego analysis of an LLC, somewhat less
emphasis is placed on whether the LLC observed internal formalities
because fewer such formalities are legally required."[3]  NetJets
Aviation, 537 F.3d at 178.  The factors are used to determine
whether the corporate form exists as a sham "for no other purpose
than as a vehicle for fraud" or whether it is a legitimate business
enterprise.  Wallace ex rel. Cencom Cable Income Partners II, Inc.
v. Wood, 752 A.2d 1175, 1184 (Del. Ch. 1999).

    Here, the facts alleged by the plaintiff show no more than the
existence of a parent-subsidiary relationship between Clos-ette and

---

[3] Under the Delaware Limited Liability Company Act, Del. Code
Ann. tit. 6 § 18-101 et seq., an LLC is required only to (1)
execute and file a proper certificate of formation, § 18-201(a);
(2) maintain a registered office in Delaware, § 18-104(a)(1); (3)
have a registered agent for service of process in Delaware, § 18-
104(a)(2); and (4) maintain certain records such as membership
lists and tax returns, § 18-305(a).  However, under LLC rules, if
two entities "fail[] to follow legal formalities when contracting
with each other it would be tantamount to declaring that they are
indeed one and the same."  NetJets Aviation, 537 F.3d at 178
(internal quotation marks omitted).

C2, which is not enough to justify piercing the corporate veil. See In re Digital Music, 812 F. Supp. 2d at 418. The plaintiff concedes that C2 has a legitimate purpose that is separate from Clos-ette: to sell organizational accessories. (Compl., ¶¶ 3, 10, 28-29). The conclusory allegation that C2 is Clos-ette's "wholly owned subsidiary" (Compl., ¶ 10), does not address any of the factors necessary to occasion piercing the corporate veil. See In re Digital Music, 812 F. Supp. 2d at 419 (explaining that even whole ownership of subsidiary is insufficient to pierce corporate veil). In fact, the description of C2 and Clos-ette provided in the complaint presents an image of two companies with two different functions, different web sites, and different clienteles. (Compl., ¶¶ 8-10). The plaintiff alleges only that the two companies share office space and phone numbers, have overlapping employees and ownership, and previously shared a bank account. (Compl., ¶¶ 4-5; 12-14). The plaintiff has not alleged facts that show the existence of a sham corporation; therefore, the breach of contract claims against Clos-ette should be dismissed.

3.   <u>Quasi-Contract Claims</u>

Ms. Allison alleges quasi-contract claims against C2, Ms. Fascitelli, and Clos-ette, based on unjust enrichment and quantum meruit. (Compl., ¶¶ 70-92). The Second Circuit interprets New York law as creating one cause of action in quasi-contract, under

17

which the principles of unjust enrichment and quantum meruit should
be analyzed. Mid-Hudson Catskill Rural Migrant Ministry, Inc. v.
Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005) (identifying
unjust enrichment as element of quasi-contract and quantum meruit
as measure of liability for breach of quasi-contract). "The
doctrine of quantum meruit or quasi contract was developed by the
law in order to make sure that a person who receives the benefit of
services pays the reasonable value of such services to the person
who performed them." Zolotar v. New York Life Insurance Co., 172
A.D.2d 27, 33, 576 N.Y.S.2d 850, 854 (1st Dep't 1991). In order to
recover in quasi-contract, New York law requires a claimant to
establish "'(1) the performance of the services in good faith, (2)
the acceptance of the services by the person to whom they are
rendered, (3) an expectation of compensation therefor, and (4) the
reasonable value of the services.'" Martin H. Bauman Associates,
Inc. v. H & M International Transport, Inc., 171 A.D.2d 479, 484,
567 N.Y.S.2d 404, 408 (1st Dep't 1991) (quoting Moors v. Hall, 143
A.D.2d 336, 337-38, 532 N.Y.S.2d 412, 414 (2d Dep't 1988)). To
state a claim for unjust enrichment in New York, a plaintiff must
allege that the defendant benefitted at the plaintiff's expense and
that equity and good conscience require restitution. See Kaye v.
Grossman, 202 F.3d 611, 616 (2d Cir. 2000).

"[T]he existence of a valid and enforceable contract generally

precludes quasi-contractual recovery." Nakamura v. Fujii, 253 A.D.2d 387, 390, 677 N.Y.S.2d 113, 116 (1st Dep't 1998) (citing Clark-Fitzpatrick, Inc. v Long Island Railroad Co., 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 656 (1987)). However, a party is not foreclosed from proceeding in the alternative on breach-of-contract and quasi-contract or quantum meruit theories of recovery where there is a bona fide dispute as to the existence of the contract. Wilmoth v. Sandor, 259 A.D.2d 252, 254, 686 N.Y.S.2d 388, 390 (1st Dep't 1999); Nakamura, 253 A.D.2d at 390, 677 N.Y.S.2d at 116; Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1272 (S.D.N.Y. 1991) (permitting plaintiff to pursue quasi-contract claim in the alternative because the validity of the contract at issue had not yet been determined).

Here, the plaintiff should be permitted to bring her quasi-contract claims with respect to C2 insofar as they provide an alternate theory of recovery should no valid contract be found. Ms. Allison alleges that C2 benefitted by "receiv[ing] valuable investor documents, contracts, and other services" that helped it grow as a company. (Compl., ¶ 83). She further alleges that the benefit to C2 was at her expense because she was never compensated with the promised salary and equity. (Compl., ¶¶ 84, 85, 91). She asserts that the reasonable value of her services should be calculated based on a yearly salary of $150,000 and 8% equity in

C2.   (Compl., ¶ 92).   Thus, she has pled sufficient facts to support quasi-contract claims against C2.  However, for the reasons outlined above, Ms. Fascitelli and Clos-ette are not liable under veil-piercing theories, and the quasi-contract claims against them should be dismissed.

    4.   Promissory Estoppel

    Ms. Allison alleges an alternate theory of recovery under promissory estoppel (Compl., ¶¶ 112-115), alleging that the defendants "repeatedly promised [her] that she would be paid a salary and . . . membership interest for her efforts at [C2]," that she turned other paying positions and continued to work for C2 in reliance on this promise, and that the defendants could reasonably have foreseen such reliance.  (Compl., ¶¶ 113-115).

    "In New York, promissory estoppel has three elements: a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained, . . . by reason of that reliance."  Cyberchron Corp. v. Calldata Systems Development, Inc., 47 F.3d 39, 44 (2d Cir. 1995) (internal quotation marks omitted).

    "A promissory estoppel claim may proceed jointly with a breach of contract claim only where it is not clear that a valid contract exists."  BLD Productions, LLC v. Viacom, Inc., No. 10 Civ. 2625, 2011 WL 1327340, at *15 (S.D.N.Y. March 31, 2011), vacated in part

on other grounds sub nom. BLD Productions, LLC v. Remote
Productions, Inc., 509 F. App'x 81 (2d Cir. 2013).  Plaintiffs who
allege the existence of a valid contract may nonetheless plead the
alternative theories of promissory estoppel and breach of contract
when the defendant does not concede the enforceability of such
contract.  Sabilia v. Richmond, No. 11 Civ. 739, 2011 WL 7091353,
at *27 (S.D.N.Y. Oct. 26, 2011); accord Polargrid LLC v. Videsh
Sanchar Nigam Ltd., No. 04 Civ. 9578, 2006 WL 903184, at *3
(S.D.N.Y. April 7, 2006) (denying defendant's Rule 12(b)(6) motion
to dismiss alternative claim of promissory estoppel because
defendant disputed validity of relevant contract).  Because the
defendants do not concede the validity of the alleged employment
agreement between C2 and Ms. Allison, the plaintiff's promissory
estoppel claim is not duplicative of her breach of contract claim.

However, New York law does not recognize promissory estoppel
as a valid cause of action in the employment context.  Van Brunt v.
Rauschenberg, 799 F. Supp. 1467, 1473 (S.D.N.Y. 1992); Dalton v.
Union Bank of Switzerland, 134 A.D.2d 174, 176, 520 N.Y.S.2d 764,
766 (1st Dep't 1987) ("The fact that defendant promised plaintiff
employment at a certain salary with certain other benefits, which
induced him to leave his former job and forego the possibility of
other employment in order to remain with defendant, does not create
a cause of action for promissory estoppel.").

21

New York law adheres to the common law presumption that "employment for an indefinite or unspecified term is at will and may be freely terminated by either party at any time without cause or notice." Horn v. New York Times, 100 N.Y.2d 85, 90-91, 760 N.Y.S.2d 378, 380 (2003). Ms. Allison has not alleged that she was promised employment with a fixed duration, only that she was promised an annual salary to begin in October 2012 and a vesting schedule for her equity share. (Compl., ¶¶ 31, 33, 36, 113.) Because at will employment arrangements "render[] any reliance on a representation of continuous employment unreasonable," Kransky v. Chetrit Group, LLC, Nos. 10 Civ. 2638, 10 Civ. 9458, 2011 WL 2326920, at *4 (S.D.N.Y. June 13, 2011), Ms. Allison's allegations are insufficient to support a claim for promissory estoppel. For these reasons, the promissory estoppel claim should be dismissed.

    5.  <u>Labor Law Claims</u>

Ms. Allison alleges various wage claims under federal and state law, including claims for unpaid wages under the FLSA and NYLL against all three defendants. (Compl., ¶¶ 116-138). I will analyze the FLSA and NYLL claims as they apply to C2 first, then as to the remaining defendants.

    a.  <u>C2</u>

The FLSA provides that "[e]very employer shall pay to each of his employees" a statutorily prescribed minimum wage of $7.25. 29

22

U.S.C. § 206(a).  An employer who fails to pay the minimum wage to an employee may be held liable for both the amount of unpaid wages and an additional equal amount in liquidated damages.  29 U.S.C. § 216(b).  In order to establish a violation of the FLSA, a plaintiff must first show that she is a "covered employee[]," who was "employed in an enterprise engaged in interstate commerce or in the production of goods for interstate commerce."  <u>Rodriguez v. Almighty Cleaning, Inc.</u>, 784 F. Supp. 2d 114, 120 (E.D.N.Y. 2011) (alteration in original) (internal quotation marks omitted); <u>see also</u> 29 U.S.C. §§ 206(a), 207(a).  To determine if a worker is an independent contractor or an employee under the FLSA, the Second Circuit looks to the following "economic reality" factors:

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

<u>Barfield v. New York City Health and Hospitals Corp.</u>, 537 F.3d 132, 142 (2d Cir. 2008); <u>accord</u> <u>Hart v. Rick's Cabaret International, Inc.</u>, 967 F. Supp. 2d 901, 912 (S.D.N.Y. 2013).  No one factor is dispositive and the analysis focuses on the totality of the circumstances of the alleged employer/employee relationship.  <u>See</u> <u>id.</u>  The goal of the economic-realities test "is to determine whether the employees in question are economically dependent upon

23

the putative employer." <u>Lopez v. Silverman</u>, 14 F. Supp. 2d 405, 414 (S.D.N.Y. 1998).

Under NYLL, the test articulated for determining employee status is somewhat different. "[T]he critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." <u>Bynog v. Cipriani Group, Inc.</u>, 1 N.Y.3d 193, 198, 770 N.Y.S.2d 692, 694-95 (2003). New York courts look at several factors, including whether the worker "(1) worked at [her] own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule." <u>Id.</u> Despite these different tests, courts tend to arrive at the same result regarding the existence of an employment relationship under both the FLSA and NYLL. <u>Hart</u>, 967 F. Supp. 2d at 924.

Ms. Allison claims that she was an employee of C2 and not an independent contractor. The defendants argue that the plaintiff conceded that she was a consultant and not an employee by stating that she worked in her "spare time" and that Ms. Fascitelli referred to her as a consultant on many occasions. (Def. Memo. 1 at 18-20). The defendants also claim that because Ms. Allison did not assert her right to a salary until she began litigation, she considered herself a consultant and not an employee. (Def. Memo.

24

1 at 20).   The defendants' arguments may raise issues of fact of whether or not Ms. Allison was an employee and, if so, whether she was exempt from minimum wage requirements.   Nonetheless, the plaintiff has sufficiently pled an employer/employee relationship with C2 to survive a motion to dismiss.[4]

### b.   Ms. Fascitelli and Clos-ette

The Second Circuit holds that "'the New York Labor Law embodies the same standards for joint employment as the FLSA." Grenawalt v. AT&T Mobility, LLC, 937 F. Supp. 2d 438, 448 (S.D.N.Y. 2013) (quoting Paz v. Piedra, No. 09 Civ. 3977, 2012 WL 121103, at *5 (S.D.N.Y. Jan. 12, 2012)).   Under the FLSA, analysis of whether an employment relationship exists includes factors such as "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."   Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984) (internal

---

[4] The defendants also argue that Ms. Allison's minimum wage claim is barred by her allegation that she was offered, and declined, a membership interest worth $60,000 on May 5, 2013, one month after she stopped working for C2.   (Def. Memo. 1 at 21-22; Compl., ¶¶ 38-39).   This argument is unavailing.   The defendants cite only to cases in which plaintiffs received compensation in excess of minimum wage requirements.   The offer made after Ms. Allison stopped working for C2 was more akin to an informal pre-pleading settlement offer, which Ms. Allison was free to reject without prejudice to her NYLL claims.

quotation marks omitted); accord Herman v. RSR Security Services Ltd., 172 F.3d 132, 139 (2d Cir. 1999).  These factors are applicable both to individuals and to corporations under the FLSA. See id. at 136, 140 (finding fifty-percent shareholder and chairman of board to be employer under FLSA according to factors above); Barfield, 432 F. Supp. 2d at 394 ("[A]ny entity that as a matter of economic reality functions as an individual's employer may be treated as an 'employer' under the [FLSA] even if another entity also so functions at the same time.").

The plaintiff alleges that Ms. Fascitelli personally hired her (Compl., ¶¶ 16, 22, 24, 30-31, 84, 107), supervised her work directly (Compl., ¶¶ 16, 27), and determined the rate and method of her compensation (Compl., ¶¶ 30-31, 33-34).

The plaintiff does not allege facts suggesting that Clos-ette was her direct employer as well, beyond the allegations that it is the parent corporation of C2 and is also owned by Ms. Fascitelli. (Compl., ¶¶ 10-11).  However, Ms. Allison argues that Clos-ette should nonetheless be liable pursuant to the "integrated enterprise theory," as Clos-ette and C2 are essentially a single employer. (Pl. Memo. 2 at 9-11).

It is unclear whether the single integrated enterprise doctrine is applicable in FLSA and NYLL cases.  The Second Circuit has yet to address this issue, Lopez v. Pio Pio NYC, Inc., No. 13

26

Civ. 4490, 2014 WL 1979930, at *3 (S.D.N.Y. May 15, 2014), though several district courts have applied the theory to such cases, see, e.g., Juarez v. 449 Restaurant, Inc., __ F. Supp. 2d __, __, 2014 WL 3361765, at *3 (S.D.N.Y. 2014); Bravo v. Established Burger One, LLC, No. 12 Civ. 9044, 2013 WL 5549495, at *8 (S.D.N.Y. Oct. 8, 2013) ("Because the Plaintiffs allege the existence of a 'single integrated enterprise' all the Corporate Defendants' motions are denied."); Salomon v. Adderley Industries, Inc., 960 F. Supp. 2d 502, 509 (S.D.N.Y. 2013); Perez v. Westchester Foreign Autos, Inc., No. 11 Civ. 6091, 2013 WL 749497, at *7 (S.D.N.Y. Feb. 28, 2013). Regardless, it is not necessary to resolve whether the theory applies in this case, as Ms. Allison's allegations fail to meet the integrated enterprise test.

"A 'single employer' situation exists where two nominally separate entities are actually part of a single integrated enterprise." Perez, 2013 WL 749497, at *7 (quoting Clinton's Ditch Cooperative Co. v. NRLB, 778 F.2d 132, 137 (2d Cir. 1985)). Courts will only treat multiple defendants as a single employer if the plaintiff establishes: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. Id. While no single factor is dispositive, "control of labor relations is the central concern." Chen v. TTY East Corp., No. 10 Civ. 5288, 2012 WL

5871617, at *3 (S.D.N.Y. Mar. 21, 2012) (citing <u>Murray</u>, 74 F.3d at 404).

In this case, Ms. Allison has alleged that Ms. Fascitelli is the founder, President (or CEO), and Creative Director of both Clos-ette and C2. (Compl., ¶¶ 4-5.) While these allegations may satisfy the third and fourth factors of the integrated enterprise test, Ms. Allison alleges no facts that would establish sufficient interrelation of operations or centralized control of labor relations.

Accordingly, the labor law claims against Clos-ette should be dismissed, but not those asserted against Ms. Fascitelli.

6.  <u>Privacy</u>

Although New York has no common law right to privacy, the state recognizes a statutory right to privacy under sections 50 and 51 of the New York Civil Rights Law ("NYCRL"). <u>Burck v. Mars, Inc.</u>, 571 F. Supp. 2d 446, 450 (S.D.N.Y. 2008). To state a claim for a statutory violation, a plaintiff must show that the defendant (1) used her name, portrait, picture, or voice, (2) for advertising or trade purposes, (3) without her written consent. <u>Burck</u>, 571 F. Supp. 2d at 451.

Ms. Allison claims that the defendants used her name on over fifty blog posts between January 27, 2011 and January 3, 2013, all without her consent. (Compl., ¶¶ 142, 145). The defendants assert

28

a statute of limitations defense.

A violation of the right of privacy under § 51 of the NYCRL must be commenced within one year, which accrues from the first time an offending item is published.  Bondar v. LASplash Cosmetics, No. 12 Civ. 1417, 2012 WL 6150859, at *6 (S.D.N.Y. Dec. 11, 2012) (citing New York Civil Practice Law and Rules § 215(3)).  While the limitations period may be refreshed by republication, id., the Complaint specifically identifies an end date of January 3, 2013 for the alleged violation (Compl., ¶ 142), and the Complaint was not filed until February 5, 2014.  The NYCRL claim is therefore time-barred on its face and should be dismissed.

Conclusion

For the reasons set forth above, the plaintiff's motion to amend the complaint (Docket no. 23) should be denied with leave to re-plead.  The defendants' motions to dismiss for failure to state a claim (Docket nos. 15, 17) should be granted to the extent of dismissing the plaintiff's common law claims for fraud and promissory estoppel against all three defendants; the claims for breach of contract and quasi-contract against Ms. Fascitelli and Clos-ette; the FLSA and NYLL claims against Clos-ette; and the NYCLR privacy claim.  The motion should be denied with respect to the plaintiff's labor law claims against C2 and Ms. Fascitelli, as well as the quasi-contract claim against C2.

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Lewis A. Kaplan, Room 2240, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       September 12, 2014

Copies mailed this date to:

Thomas M. Lancia, Esq.
120 Broadway
Suite 1040
New York, New York 10271

Michael Patrick Mangan, Esq.
Mangan Ginsberg LLP
80 Maiden Lane
Suite 509
New York, New York 10038

30

Ricki E. Roer, Esq.
Bindu Krishnasamy, Esq.
Nancy V. Wright, Esq.
Wilson Elser Moskowitz Edelman & Dicker LLP
150 East 42 Street
New York, New York 10017