UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
CLAIRE ALLISON,                         : 14 Civ. 1618 (LAK) (JCF)
                                        :
          Plaintiff,                    :      MEMORANDUM
                                        :      AND   ORDER
     - against -                        :
                                        :
CLOS-ETTE TOO, L.L.C., CLOS-ETTE,       :
L.L.C., and MELANIE CHARLTON            :
FASCITELLI,                             :
                                        :
          Defendants.                   :
- - - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

     The plaintiff, Claire Allison, has filed motions to amend the
Complaint, to compel the production of electronically stored
information in native format, and to quash subpoenas issued by the
defendants to several non-parties.  For the following reasons, the
motions to amend and compel are denied, and the motion to quash is
granted in part and denied in part.

Background

     This action was originally filed in New York Supreme Court,
and was removed to this Court on March 10, 2014.  The Complaint
asserted employment-related claims against three defendants: Clos-
ette Too, LLC ("C2"), the plaintiff's former employer; Melanie
Charlton Fascitelli ("Ms. Charlton"), the owner of C2; and Clos-
ette, LLC, the alleged parent company of C2.  In short, the
Complaint alleges as follows.  Ms. Allison applied for a position
with C2 and was hired by Ms. Charlton.  (Complaint ("Compl."), ¶¶
4, 5, 15-16).  At the time, she was employed as Vice President of
Asset Management at Lone Star Funds.  (Compl., ¶ 15).  In March

2012, she began to work in her spare time for C2, devoting up to forty hours per week to the company, while continuing her full-time employment at Lone Star Funds. (Compl., ¶¶ 16, 18). After working for C2 for several months, Ms. Allison and Ms. Charlton began discussions regarding Ms. Allison's salary and membership interest in C2. (Compl., ¶¶ 24, 30, 31). Ms. Allison alleges that she and Ms. Charlton ultimately agreed that she would receive a salary of $150,000 per year and an 8% membership interest, with 3% to vest immediately and 5% to vest at various milestones. (Compl., ¶¶ 30-31, 33-34). Ms. Allison was terminated from Lone Star Funds in December 2012. (Compl., ¶ 35). On January 17, 2013, having received no compensation from C2, she inquired about her salary. (Compl., ¶ 36). Ms. Charlton responded that the plaintiff was being paid with a membership interest. (Compl., ¶ 36). On April 4, 2013, Ms. Allison informed Ms. Charlton that she would no longer work for C2, but would retain her equity interest. (Compl., ¶ 38). Ms. Charlton informed the plaintiff that her equity interest had not vested, but offered her a one-half percent interest for "helping with the business plan." (Compl., ¶¶ 38-39).

The defendants filed motions to dismiss the Complaint for failure to state a claim. The plaintiff opposed the defendants' motions and filed a cross-motion to amend the Complaint. I recommended that the motion to amend be denied with leave to re-plead and that the defendants' motions to dismiss be granted in part and denied in part. Allison v. Clos-ette Too, LLC, No. 14 Civ. 1618, 2014 WL 4996358, at *1 (S.D.N.Y. Sept. 15, 2014), report

2

and recommendation adopted, 2014 WL 5002099 (S.D.N.Y. Oct. 7, 2014).  The dismissed claims included all claims against Clos-ette, as the facts alleged in the Complaint "show[ed] no more than the existence of a parent-subsidiary relationship between Clos-ette and C2, which is not enough to justify piercing the corporate veil." Id. at *7.  The surviving claims allege violation of the Fair Labor Standards Act and New York Labor Law by C2 and Ms. Charlton, and breach of contract and quasi-contract by C2.  Id. at *12.

Discussion

    A.  Motion to Amend

    The plaintiff moves to amend the complaint to add "numerous additional facts clarified and fully developed during discovery," which she states "not only lend more specificity to the Plaintiff's claims, but also further support [the] Plaintiff's claim for veil piercing as to Clos-ette."  (Plaintiff's Memorandum of Law in Support of Plaintiff's Motion to Amend Complaint and Compel Discovery ("Pl. Memo. I") at 3).

        1.  General Legal Standard

    Rule 15 of the Federal Rules of Civil Procedure provides that courts should "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2); see also Foman v. Davis, 371 U.S. 178, 182 (1962); Aetna Casualty & Surety Co. v. Aniero Concrete Co., 404 F.3d 566, 603-04 (2d Cir. 2005).  However, it is within "the sound discretion of the court" to determine whether to grant or deny leave to amend.  John Hancock Mutual Life Insurance Co. v. Amerford International Corp., 22 F.3d 458, 462 (2d Cir.

1994).  Regarding the use of this discretion, the Supreme Court has stated:

> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.  -- the leave sought should . . . be freely given.

Foman, 371 U.S. at 182 (internal quotation marks omitted); see also McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) ("A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.").  In this case, there has not been undue delay in the filing of the motion, which was filed less than one month after the motions to dismiss were decided, see Securities and Exchange Commission v. DCI Telecommunications, Inc., 207 F.R.D. 32, 34-35 (S.D.N.Y. 2002) (allowing amendment where plaintiff obtained discovery supporting amendment a few months before filing motion); American Medical Association v. United Healthcare Corp., No. 00 Civ. 2800, 2006 WL 3833440, at *4 (S.D.N.Y. Dec. 29, 2006) (finding no undue delay where party moved to amend several months after learning relevant facts in discovery), nor have the defendants alleged that the amendment would be unduly prejudicial, see Alexander Interactive, Inc. v. Adorama, Inc., No. 12 Civ. 6608, 2014 WL 113728, at *3 (S.D.N.Y. Jan. 13, 2014) (noting that the non-moving party bears the burden of demonstrating that "substantial prejudice" would result if the proposed amendment were granted).  However, the defendants argue

4

that the motion should be denied as futile. (Defendants'
Memorandum of Law in Opposition to Plaintiff's Motion to Amend and
Compel Discovery ("Def. Memo. I") at 7-8).

    2.  <u>Futility</u>

"It is well established that '[l]eave to amend need not be
granted . . . where the proposed amendment would be "futil[e]."'"
<u>Williams v. Citigroup Inc.</u>, 659 F.3d 208, 214 (2d Cir. 2011)
(alterations in original) (quoting <u>Advanced Magnetics, Inc. v.
Bayfront Partners, Inc.</u>, 106 F.3d 11, 18 (2d Cir. 1997)). "An
amendment is futile when 'it could not withstand a motion to
dismiss pursuant to Rule 12(b)(6).'" <u>Demel v. Group Benefits Plan
for Employees of Northern Telecom, Inc.</u>, No. 07 Civ. 0189, 2012 WL
1108311, at *6 (S.D.N.Y. March 30, 2012) (quoting <u>Oneida Indian
Nation v. City of Sherrill</u>, 337 F.3d 139, 168 (2d Cir. 2003), <u>rev'd
on other grounds</u>, 544 U.S. 197 (2005)); <u>see also</u> <u>AEP Energy
Services Gas Holding Co. v. Bank of America, N.A.</u>, 626 F.3d 699,
726 (2d Cir. 2010); <u>Slay v. Target Corp.</u>, No. 11 Civ. 2704, 2011 WL
3278918, at *2 (S.D.N.Y. July 20, 2011) ("Futility generally turns
on whether the proposed amended pleading states a viable claim.");
<u>Penn Group, LLC v. Slater</u>, No. 07 Civ. 729, 2007 WL 2020099, at *4
(S.D.N.Y. June 13, 2007) (collecting cases). A court may deny a
motion to amend as futile only where no colorable grounds exist to
support the proposed claim; if it "sets forth facts and
circumstances which may entitle the plaintiff to relief, then
futility is not a proper basis on which to deny the amendment."
<u>Saxholm AS v. Dynal, Inc.</u>, 938 F. Supp. 120, 124 (E.D.N.Y. 1996);

see also Cinelli v. Oppenheim-Ephratah Central School District, No.
6:07 CV 235, 2008 WL 111174, at *1 (N.D.N.Y. Jan. 7, 2008) (where
amendments are colorable and based upon disputed facts, "they
should be allowed, and a comprehensive legal analysis deferred to
subsequent motions to dismiss or for summary judgment."). As when
considering a motion to dismiss under Rule 12(b)(6), the court must
"accept as true all of the proposed complaint's factual
allegations, and draw all reasonable inferences in favor of
plaintiff." Henneberry v. Sumitomo Corp. of America, 415 F. Supp.
2d 423, 433 (S.D.N.Y. 2006). The party opposing the motion to
amend bears the burden of establishing that leave to amend would be
futile. Amaya v. Roadhouse Brick Oven Pizza, Inc., 285 F.R.D. 251,
253 (E.D.N.Y. 2012); Sotheby's, Inc. v. Minor, No. 08 Civ. 7694,
2009 WL 3444887, at *3 (S.D.N.Y. Oct. 26, 2009).

####     3.    Piercing the Corporate Veil

The plaintiff claims that the proposed amendment alleges facts
sufficient to justify piercing the corporate veil as to Clos-ette
under an alter-ego theory of liability. (Pl. Memo. I at 3;
Plaintiff's Reply Memorandum of Law in Support of Plaintiff's
Motion to Amend Complaint and Compel Discovery at 4). Under
Delaware law,[1] "a court can pierce the corporate veil of an entity
. . . where a subsidiary is in fact a mere instrumentality of its
owner." Geyer v. Ingersoll Publications Co., 621 A.2d 784, 793

---

[1] As explained in my report and recommendation regarding the
motions to dismiss, the question of whether Clos-ette may be liable
as C2's alter-ego is governed by Delaware law. Allison, 2014 WL
4996358, at *6.

(Del. Ch. 1992).  To prevail under the alter-ego theory of veil piercing, a Ms. Allison must show "(1) that the parent and subsidiary operated as a single economic entity and (2) that an overall element of injustice or unfairness . . . [is] present." Fletcher v. Atex, Inc., 68 F.3d 1451, 1457 (2d Cir. 1995) (alterations in original) (internal quotation marks omitted) (discussing Delaware law).

a.  Single Economic Entity

"[A]n alter ego analysis must start with an examination of factors which reveal how the corporation operates and the particular defendant's relationship to that operation." NetJets Aviation, Inc. v. LHC Communication, LLC, 537 F.3d 168, 176-77 (2d Cir. 2008) (alteration in original) (internal quotation marks omitted).  Whether two corporations functioned as a single economic entity is determined by looking at such factors as whether corporate formalities were ignored, funds were siphoned or intermingled, capitalization was adequate, or the subsidiary was a "mere sham."  In re Digital Music Antitrust Litigation, 812 F. Supp. 2d 390, 418 (S.D.N.Y. 2011).  "Simply phrased, the standard may be restated as: 'whether [the two entities] operated as a single economic entity such that it would be inequitable for th[e] Court to uphold a legal distinction between them.'"  NetJets Aviation, 537 F.3d at 177 (alteration in original) (quoting Mabon, Nugent & Co. v. Texas American Energy Corp., No. Civ. A. 8578, 1990 WL 44267, at *5 (Del. Ch. April 12, 1990)).  "In the alter-ego analysis of [a limited liability corporation ("LLC")], somewhat

7

less emphasis is placed on whether the LLC observed internal formalities because fewer such formalities are legally required."[2] NetJets Aviation, 537 F.3d at 178.

"[N]o single factor c[an] justify a decision to disregard the corporate entity, but . . . some combination of them [i]s required . . . ." Id. at 177 (alteration in original) (internal quotation marks omitted) (quoting Harco National Insurance Co. v. Green Farms, Inc., Civ. A. No. 1131, 1989 WL 110537, at *5 (Del. Ch. Sept. 19, 1989)); see, e.g., National Gear & Piston, Inc. v. Cummins Power, 975 F. Supp. 2d 392, 404 (S.D.N.Y. 2013) (finding allegations that "do no more than restate the common characteristics of a parent-subsidiary relationship" to be insufficient for veil-piercing under Delaware law); VFS Financing, Inc. v. Falcon Fifty LLC, 17 F. Supp. 3d 372 (S.D.N.Y. 2014) ("The separate corporate existences of parent and subsidiary will not be set aside merely on a showing of common management of the two entities, nor on a showing that the parent owned all the stock of the subsidiary." (internal quotation marks omitted)).  However, under LLC rules, if two entities "fail[] to follow legal formalities when contracting with each other it would be tantamount to declaring that they are indeed one and the same."  NetJets Aviation, 537 F.3d at 178 (internal quotation marks omitted).

---

[2] Under the Delaware Limited Liability Company Act, Del. Code Ann. tit. 6, § 18-101 et seq., an LLC is required only to (1) execute and file a proper certificate of formation, § 18-201(a); (2) maintain a registered office in Delaware, § 18-104(a)(1); (3) have a registered agent for service of process in Delaware, § 18-104(a)(2); and (4) maintain certain records such as membership lists and tax returns, § 18-305(a).

In the proposed amended complaint, Ms. Allison alleges that Ms. Charlton is the sole owner of both Clos-ette and C2 (Proposed Amended Complaint ("Amend. Compl."), attached as Exh. 1 to Affidavit of Thomas M. Lancia dated Oct. 31, 2014, ¶ 12) and that she is solely responsible for hiring and firing decisions for both companies (Amend. Compl., ¶ 13). The companies have shared office space and telephone numbers since June 2011. (Amend. Compl., ¶ 15). The proposed amended complaint further alleges that the companies have intermingled finances, and that loans and payments made between the two companies are neither documented nor expected to be reimbursed. (Amend. Compl., ¶¶ 16-24, 29, 33, 46). The plaintiff specifies that the companies' sole employee routinely performs work for both companies but is compensated by only one (Amend. Compl., ¶¶ 16-18); that Clos-ette paid the full rent for the shared office space and other business bills through at least 2012, without being reimbursed by C2 (Amend. Compl., ¶¶ 21-22); that C2 has fulfilled orders for Clos-ette clients without being reimbursed (Amend. Compl., ¶ 46); and that the two companies have previously held a shared bank account and filed business taxes as a single entity (Amend. Compl., ¶¶ 20, 29).

These allegations are sufficient to allow the Court to draw the reasonable inference that Clos-ette and C2 have operated as a single economic entity. See Soroof Trading Development Co. v. GE Microgen, Inc., 283 F.R.D. 142, 150-51 (S.D.N.Y. 2012) (finding allegations that wholly-owned subsidiary was undercapitalized, that parent company provided all capital for subsidiary venture, that

subsidiary was staffed by parent's personnel, that parent leased subsidiary's space, and that parent had representation on subsidiary's board of directors and management committee sufficient to support first element of alter-ego liability).

      b.   Injustice or Unfairness

      However, to prevail under the alter-ego theory, Ms. Allison must also show the presence of "an overall element of injustice or unfairness." Fletcher, 68 F.3d at 1457 (internal quotation marks omitted). "To satisfy this element of a veil-piercing attack, a plaintiff must allege injustice or unfairness that is a result of an abuse of the corporate form." National Gear, 975 F. Supp. 2d at 406; accord Trevino v. Merscorp, Inc., 583 F. Supp. 2d 521, 530 (D. Del. 2008). "[I]t is well established that a plaintiff's underlying cause of action alone is insufficient to satisfy the injustice requirement." National Gear, 975 F. Supp. 2d at 406; accord NetJets Aviation, 537 F.3d at 183 ("[T]he claimed injustice must consist of more than merely the [claim] . . . that is the basis of the plaintiff's lawsuit."). While the facts used to show that business entities operated as a single enterprise can support the element of fraud or inequality, NetJets Aviation, 537 F.3d at 183, disregard of the corporate form is not itself sufficient without an allegation that such disregard was actually used to perpetrate an injustice, Zubik v. Zubik, 384 F.2d 267, 273 (3d Cir. 1967), cert. denied, 390 U.S. 988 (1968). "Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud." Wallace ex rel. Cencom Cable Income Partners

II, Inc. v. Wood, 752 A.2d 1175, 1184 (Del. Ch. 1999); accord National Gear, 975 F. Supp. 2d at 406.

While the plaintiff alleges facts supporting the inference that Clos-ette and C2 operated as a single economic entity, she does not allege that this arrangement was used to perpetrate an injustice or unfairness independent of her own claims. The amended complaint's allegations that Clos-ette and C2 had intermingled finances and shared ownership and control are not themselves sufficient to support the second element of alter-ego liability. See National Gear, 975 F. Supp. 2d at 406; Zubik, 384 F.2d at 273; cf. Soroof, 283 F.R.D. at 151-52 (finding allegations that parent company siphoned fees from subsidiary, used corporate form to avoid legal and financial obligations, and caused subsidiary to make promises it could not keep in order to reap financial windfall sufficient to support inference of injustice under alter-ego theory).

Because the proposed allegations are insufficient to justify piercing the corporate veil, the amendment would be futile. The plaintiff's motion to amend the complaint is therefore denied.

   B.   Motion to Compel

The plaintiff seeks to compel the production in native format of electronically stored information that was previously produced to her by the defendants. The plaintiff originally requested this information on or about July 8, 2014, without specifying a format. (Pl. Memo. I at 5; Def. Memo. I at 9). The defendants responded to the plaintiff's demands on or about July 24, 2014, and supplemented

11

their response on various dates.  (Def. Memo. I at 9).  The
plaintiff did not object to the format of these productions.  (Def.
Memo. I at 9).  However, as the plaintiff's brief indicates, the
defendants' August 3, 2014 document demand, which requested that
all electronically stored information be produced in native format
(Def. Memo. I at 9), inspired the plaintiff to make a reciprocal
request regarding the documents previously produced by the
defendants.  (Pl. Memo. I at 5).  Following an oral discussion
between the parties' counsel on this issue,[3] the plaintiff's
counsel requested by e-mail that the defendants reproduce the
earlier production in native format.  (E-mail of Krystina Maola
dated Oct. 28, 2014, attached as part of Exhibit A to Affidavit of
Krystina Maola dated Oct. 31, 2014 ("Maola Aff.")).  When the
defendants declined to do so (E-mail of Michael P. Mangan dated
Oct. 28, 2014, attached as part of Exhibit A to Maola Aff.), the
plaintiff filed the instant motion to compel.

     Under Rule 34 of the Federal Rules of Civil Procedure, a party
may specify the form in which electronically stored information is
to be produced.  Fed. R. Civ. P. 34(b)(1)(C).  "If a request does

---

[3] The parties disagree on the contents of this discussion,
which took place on October 14, 2014.  The plaintiffs claim that
the defendants' counsel promised to reproduce the previously
produced electronically stored information in native format upon a
written request.  (Pl. Memo. I at 5).  The defendants maintain that
their counsel promised only that, should the plaintiff make any
follow-up requests for production, responsive documents could be
produced in native format.  (Def. Memo. I at 10).  Even assuming
the plaintiff's understanding of the conversation, the plaintiff
provides no legal support for the proposition that such a promise
would be legally binding, nor does she claim that she has suffered
any prejudice from the defendants' failure to adhere to the alleged
promise.

not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. P. 34(b)(2)(E)(ii). The plaintiff did not originally object to the format of the defendants' productions. (Def. Memo. I at 9). She does not appear to contest that it is "reasonably usable," nor does she even allege that native format documents would be more useful to her. As "[a] party need not produce the same electronically stored information in more than one form," Fed. R. Civ. P. 34(b)(2)(E)(3), the plaintiff's motion to compel is denied.

   C.   <u>Motion to Quash</u>

   Finally, the plaintiff moves to quash subpoenas served by the defendants on three non-parties: Lone Star Acquisitions, LLC ("Lone Star"), the University of Miami (the "University"), and Seema Gohil. The plaintiff asserts that the subpoenas must be quashed both because the defendants did not provide proper notice of them and because the information they seek is irrelevant. (Plaintiff's Memorandum of Law in Support of Plaintiff's Motion to Quash Third-Party Subpoenas ("Pl. Memo. II") at 1-3). As the defendants have represented that they no longer intend to seek information from Ms. Gohil (Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Quash Non-Party Subpoenas ("Def. Memo. II") at 5), the motion is moot with respect to the Gohil subpoena.

      1.   <u>Background</u>

   The defendants served subpoenas on Lone Star and the

University of Miami (the plaintiff's alma mater) between September 10 and September 15, 2014 (Pl. Memo. II at 2; Def. Memo. II at 4), with a return date of September 24 (Def. Memo. II at 4). The plaintiff did not receive notice of these subpoenas until September 18. (Pl. Memo. II at 2; Def. Memo. II at 4). On September 24, 2014, the University produced responsive documents to the defendants. (Pl. Memo. II at 1). At some point, the defendants also made unsuccessful efforts to serve Ms. Gohil. (Def. Memo. II at 5). The plaintiff learned of these efforts on September 26, 2014, whereupon she requested a conference regarding the non-party subpoenas by letter motion. (Pl. Memo. II at 2).

I denied the plaintiff's motion, and advised the plaintiff that she could file a formal motion to quash the subpoenas. (Order dated Sept. 29, 2014). I further ordered that the third-party subpoenas were not to be enforced until such motion was decided. (Order dated Sept. 29, 2014). On November 10, 2014, I ordered the subpoenaed parties to comply with the defendants' subpoenas by November 17, 2014, unless they or the plaintiff objected by that date. (Order dated November 10, 2014). The plaintiff's motion to quash was filed on November 17, 2014.

2. The Lone Star Subpoenas

a. Notice

The plaintiff argues that the Lone Star subpoenas must be quashed because the defendants did not notify her of them in a timely manner. Rule 45 of the Federal Rules of Civil Procedure requires that if a subpoena "commands the production of documents,

14

electronically stored information, or tangible things . . . , then before it is served on the person to whom it is directed, a notice and copy of the subpoena must be served on each party." Fed. R. Civ. P. 45(a)(4).  Notice allows other parties an opportunity to object to the production or to serve a demand for additional information.  See Fed. R. Civ. P. 45(a)(4) Advisory Committee's Notes, 2013 Amendment; see also Cootes Drive LLC v. Internet Law Library, Inc., No. 01 Civ. 877, 2002 WL 424647, at *2 (S.D.N.Y. March 19, 2002).  Some courts have treated a party's failure to strictly adhere to the prior notice rule as grounds to quash the subpoena.  See, e.g., Mirra v. Jordan, 13 Civ. 5519, 2014 WL 2511020, at *3 (S.D.N.Y. May 28, 2014); Cootes Drive LLC, 2002 WL 424647, at *2; Schweizer v. Mulvehill, 93 F. Supp. 2d 376, 412 (S.D.N.Y. 2000); Murphy v. Board of Education, 196 F.R.D. 220, 222 (W.D.N.Y. 2000).  "The majority approach, however, requires that the aggrieved party demonstrate some form of prejudice resulting from the failure to provide advance notice."  Kingsway Financial Services, Inc. v. Pricewaterhouse-Coopers LLP, No. 03 Civ. 5560, 2008 WL 4452134, at *3 (S.D.N.Y. Oct. 2, 2008); see also Fox Industries, Inc. v. Gurovich, No. 03 CV 5166, 2006 WL 2882580, at *11 (E.D.N.Y. Oct. 6, 2006); Zinter Handling, Inc. v. General Electric Co., No. 04 CV 500, 2006 WL 3359317, at *2 (N.D.N.Y. Nov. 16, 2006); Seewald v. IIS Intelligent Info Systems, Ltd., No. 95 CV 824, 1996 WL 612497, at *5 (E.D.N.Y. Oct. 16, 1996).

The plaintiff does not claim to have been prejudiced by the late notice of the Lone Star subpoenas.  To the contrary, I

15

postponed enforcement of the subpoenas in order to allow the plaintiff the opportunity to file the instant motion (Order dated Sept. 29, 2014), and Lone Star has not, to my knowledge, responded to the subpoenas to date.   Because the plaintiff has not been prejudiced by the late notice, I decline to quash the subpoenas on Rule 45 grounds, and will address the plaintiff's relevance arguments.

        b.   <u>Relevance</u>

           i.   <u>Standing</u>

    As an initial matter, the defendants contend that Ms. Allison does not have standing to move to quash the Lone Star subpoenas on relevance grounds because she has not asserted that the materials sought from Lone Star are privileged.   (Def. Memo. II at 7).   A party generally lacks standing to challenge a subpoena served on a non-party unless the objecting party has a personal right or privilege in the information sought.   <u>See</u> <u>Estate of Ungar v.</u> <u>Palestinian Authority</u>, 332 Fed. App'x 643, 645 (2d Cir. 2009); <u>Langford v. Chrysler Motors Corp.</u>, 513 F.2d 1121, 1126 (2d Cir. 1975); 9A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice</u> <u>& Procedure</u>, § 2459 (3d ed. 2008).   However, courts have repeatedly found that an individual possesses a privacy interest with respect to information contained in her employment records and therefore has standing to challenge subpoenas seeking such records.   <u>See,</u> <u>e.g.,</u> <u>Lev v. South Nassau Communities Hospital</u>, No. 10 CV 5435, 2011 WL 3652282, at *1 (E.D.N.Y. Aug. 18, 2011); <u>Hendricks v. Total</u> <u>Quality Logistics, LLC</u>, 275 F.R.D. 251, 253 n.1 (S.D. Ohio 2011);

16

<u>Barrington v. Motgage IT, Inc.</u>, No. 07-61304-CIV, 2007 WL 4370647, at *2 (S.D. Fla. Dec. 10, 2007) (collecting cases).  As Ms. Allison therefore has standing to challenge the Lone Star subpoenas, I will address the merits of her relevance arguments.

### ii.  <u>Legal Standard</u>

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept."  <u>Condit v. Dunne</u>, 225 F.R.D. 100, 105 (S.D.N.Y. 2004); <u>see also</u> <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351 (1978) (relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case").  Indeed, "the 'right of litigants to discover and present relevant evidence in civil litigation is given great weight in federal courts.'" <u>Mays v. Town of Hempstead</u>, No. 10 CV 3998, 2011 WL 4345164, at *2 (E.D.N.Y. Sept. 15, 2011) (quoting <u>Apicella v. McNeil Laboratories, Inc.</u>, 66 F.R.D. 78, 82 (E.D.N.Y. 1975)).  Moreover, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).

The burden of demonstrating relevance is on the party seeking discovery.  <u>See, e.g.</u>, <u>Mandell v. Maxon Co.</u>, No. 06 Civ. 460, 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007).  "Once relevance has been shown, it is up to the responding party to justify curtailing

17

discovery." <u>Fireman's Fund Insurance Co. v. Great American</u> <u>Insurance Co. of New York</u>, 284 F.R.D. 132, 134 (S.D.N.Y. 2012) (internal quotation marks omitted).

### iii.   <u>Plaintiff's Employment File</u>

The first demand served on Lone Star by the defendants is for:

> Claire Allison's employment file, including, without
> limitation, all employment agreement(s), employment
> offer(s), notice(s) of promotion, accommodation(s),
> salary and bonus(es), notice(s) of termination,
> performance review(s), warning(s) and admonition(s),
> severance agreement(s), and any documents, including all
> correspondence, notes, memos, applications, forms, and
> all other documents, regarding her employment,
> compensation, and termination.

(Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action ("Lone Star Subpoena"), attached as part of Exh. 1 to Certification of Thomas M. Lancia dated Nov. 17, 2014 ("Lancia Cert."), at 2).

The defendants argue that the information sought regarding Ms. Allison's salary is relevant to her quantum meruit claims. (Def. Memo. II at 3). They assert that in salary negotiations with C2, the plaintiff represented that the $200,000 she demanded was "significantly less than her salary at Lone Star." (Def. Memo. II at 3). However, the defendants do not explain how Ms. Allison's previous salary is relevant to the value of the services she provided to C2. "The doctrine of quantum meruit or quasi contract was developed by the law in order to make sure that a person who receives the benefit of services pays the reasonable value of such services to the person who performed them." <u>Zolotar v. New York</u> <u>Life Insurance Co.</u>, 172 A.D.2d 27, 33, 576 N.Y.S.2d 850, 854 (1st

Dep't 1991).  In order to recover in quasi-contract, New York law requires a claimant to establish "(1) the performance of the services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services."  Martin H. Bauman Associates, Inc. v. H & M International Transport, Inc., 171 A.D.2d 479, 484, 567 N.Y.S.2d 404, 408 (1st Dep't 1991) (internal quotation marks omitted).  A person's salary history could in theory be relevant to the value of the services she provides.  However, here, the defendants have not alleged any similarity between the work Ms. Allison performed as Vice President of Asset Management at Lone Star and the services she provided to C2.  Information regarding Ms. Allison's salary and bonuses at Lone Star are therefore irrelevant.

The same rationale applies to the defendants' demand for information regarding Ms. Allison's "performance and experience with Lone Star."  The defendants argue that this information is relevant to the plaintiff's quantum meruit claim.  (Def. Memo. II at 7).  However, even though the defendants have taken the plaintiff's deposition and are therefore presumably familiar with her work history, they do not allege that the skills required for her responsibilities at Lone Star were applicable to her work at C2; therefore, they have not met their burden to establish the relevance of this information.

The defendants' argument regarding the information sought on Ms. Allison's termination is confusing.  They note that while the

19

complaint alleges that the plaintiff was terminated because of the time she dedicated to her work for C2, the plaintiff has given various other explanations for her termination at different times. (Def. Memo. II at 2-3).  The cause of Ms. Allison's departure from Lone Star may have been relevant to a promissory estoppel claim, but all such claims have been dismissed.  <u>Allison</u>, 2014 WL 5002099, at *1.  Because the defendants have not identified a surviving claim or defense to which Ms. Allison's termination from Lone Star is relevant, I grant the plaintiff's motion to quash this portion of the subpoena.  The same ruling applies to the defendants' requests for warnings and admonitions given to the plaintiff, the plaintiff's performance reviews, and severance agreements.

iv.  <u>Grievances Filed by Plaintiff</u>

The defendants also demanded that Lone Star produce "all written or recorded complaints made by Claire Allison about [Lone Star], its employees, officers, and/or principals during or after her employment, including without limitation any claim for mistreatment, harassment, and /or discrimination."  (Lone Star Subpoena at 2).  To the extent that such information may be relevant to Ms. Allison's departure from Lone Star, they are irrelevant for the reasons stated above.  The plaintiff has not alleged mistreatment or discrimination by the defendants in this case, and the defendants have not offered an explanation of the relevance of this information to any claims or defenses.  This portion of the subpoena is therefore quashed.

20

v.   <u>Plaintiff's Termination</u>

The defendants' third demand of Lone Star seeks additional information regarding Ms. Allison's termination and the cause of such termination.  (Lone Star Subpoena at 2).  For the reasons discussed above, this portion of the subpoena seeks irrelevant information and is therefore quashed.

vi.  <u>Plaintiff's Hours</u>

The defendants' fourth demand of Lone Star is for all documentation regarding the hours Ms. Allison spent working for Lone Star between November 2011 and January 2013, including her daily schedule.  (Lone Star Subpoena at 2).  The defendants argue that this information is relevant to her quantum meruit and minimum wage claims.  The plaintiff alleges that she worked forty hours per week for C2 while also working between sixty and eighty hours per week for Lone Star.  (Def. Memo. II at 2 (citing Compl., ¶ 18; Deposition of Claire Allison dated Aug. 19, 2014, attached as Exhibit B to Def. Memo. II, at 73-74)).  As the defendants argue, Ms. Allison's hours at Lone Star, including her daily schedule, are potentially relevant to the accuracy of the number of hours she claims to have worked for C2.  The motion to quash is therefore denied with respect to this demand.

vii. <u>Testimony of Gerald Casey</u>

The defendants' subpoena of Gerald Casey, Lone Star's Managing Director, seeks testimony regarding Ms. Allison's (1) employment at Lone Star, (2) hours and days at Lone Star, (3) termination from Lone Star, and (4) complaints made against Lone Star.  (Subpoena of

Gerald Casey, attached as part of Exhibit 1 to Lancia Cert., at 2). The same rulings discussed above apply here.  The motion to quash this subpoena is therefore denied with respect to the second subject and granted with respect to the first, third and fourth subjects.

3.   The University of Miami Subpoena

The plaintiff argues that the University of Miami subpoena was, like the Lone Star subpoenas, not properly noticed under Rule 45 of the Federal Rules of Civil Procedure.  (Pl. Memo. II at 2). Unlike Lone Star, however, the University has already produced documents to the defendants. (Pl. Memo. II at 1).  These documents were produced on September 24, 2014, prior to my order that the non-party subpoenas not be enforced until the plaintiff's motion to quash could be adjudicated.  (Pl. Memo. II at 1; Order dated Sept. 29, 2014).

As discussed above, the majority approach to Rule 45's prior notice requirement is to quash an improperly-noticed non-party subpoena if the moving party has suffered prejudice from the late notice. Kingsway Financial Services, Inc., 2008 WL 4452134, at *3. Because the University promptly responded to the defendants' subpoena, the defendants' failure to provide Ms. Allison with prior notice of this subpoena deprived her of the opportunity to object to the production.  As such, the plaintiff has been prejudiced, and I need not reach the parties' arguments regarding the relevance of the information sought by the subpoena.  The defendants are enjoined from reviewing the information provided to them by the

22

University, must return such information to the University, and must provide to the plaintiff copies of any information they have already reviewed.  Cf. Mirra, 2014 WL 2511020, at *3 (ordering party not to use any information received through subpoena quashed due to prior notice violation); Equal Employment Opportunity Commission v. Tony's Lounge, Inc., No. 3:08 CV 677, 2009 WL 2486764, at *2 (S.D. Ill. Aug. 13, 2009) (same).

## Conclusion

For the foregoing reasons, the plaintiff's motion to amend the complaint and motion to compel (Docket no. 71) are denied, and her motion to quash (Docket no. 85) is granted in part and denied in part.  Discovery is re-opened for the limited purpose of allowing Lone Star and Gerald Casey to respond to the defendants' subpoenas, as limited above; they are directed to do so within 10 days of the issuance of this order.

SO ORDERED.

James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       January 9, 2015

Copies mailed this date:
Thomas M. Lancia, Esq.
Thomas M. Lancia PLLC
22 Cortlandt St., 16th Floor
New York, NY 10007

Michael P. Mangan, Esq.
Mangan Ginsburg LLP
80 Maiden Lane, Suite 509
New York, NY 10038

23